## Diamond et al. v. Commonwealth.

(Decided February 13, 1931.)

WILLIAM R. McCOY for appellants.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellants and defendants below, Jeff Diamond, Bert Diamond, Ona Diamond, and Robert Thompson, were jointly indicted by the grand jury of Martin county in which they were charged with violating what is generally termed our Ku Klux statute, as contained in sections 1241a-1 and 1241a-3. At their joint trial they were each convicted and punished by confinement in the penitentiary for one year. Their motion for a new trial was overruled, and they prosecute this appeal, and through their counsel urge as grounds for reversal: (1) That the court erred in not instructing the jury to acquit them; (2) the admission of incompetent evidence; and (3) failure of the court to properly instruct the jury by not submitting to it the whole law of the case. These three divisions embrace all the contentions made, although the presentation as contained in brief of counsel is further subdivded. The three grounds as classified by us will be considered and determined in the order named.

The disposition of ground 1 requires a brief statement of the substantial facts proven at the trial. Jeff Diamond lived in a remote section of Martin county and only a short distance from the residence of his father, John Diamond. Bert and Ona Diamond were his brothers, and one of them lived some five or six miles from him, while the other's residence was some two or three miles distant. Thompson, a brother-in-law of his three codefendants, resided about the same distance from where Jeff Diamond lived, as did Ona Diamond. A justice of the peace of the county had issued a search

warrant to search the residence and premises of Jeff Diamond, and it was placed in the hands of Wilson Evans, a deputy sheriff, for execution; and he obtained the assistance of his brother, David Evans, another deputy sheriff, and two others, in serving and executing it. Between 10 and 11 o'clock a. m., on July 24, 1930, the officers and those summoned to assist them approached the residence of Jeff Diamond near which is a rise in the road. As the posse appeared in view over the elevation, they discovered some if not all of the defendants sitting on a log in the yard of the residence, and they also discovered other persons there, some of whom were unknown to them, and immediately some one fired a gun of some description from out of or near the dwelling house, and which was immediately followed by a fusilade of shots from those of the defendants who were in the yard as described, all of whom were armed, except perhaps Thomson, who ran into the residence and obtained a double-barrel shotgun. The officers returned the fire, and some thirty or forty shots were exchanged with one of the officers receiving a slight flesh wound.

The gun of Wilson Evans, the leader of the posse, became locked or in some manner disabled. Other members of the posse become alarmed and sought safety in a nearby brush pile, and defendants immediately rushed upon them and disarmed them and struck at least two of them over the head with pistols and guns and captured the whole crowd. Later they put them in the road and told them to go back the way they came. Bert Diamond stated in the presence of the others, at about the time of or immediately following the capture, in substance, that they (defendants) knew of the intended visit of the officers and had prepared for them.

The testimony as so briefly outlined was that given by the four members of the posse, and it is practically admitted by defendants with the exception that they testified that the first shot was fired at them by Wilson Evans, and they denied the statement that was made by Bert Diamond as proven by the commonwealth's witnesses. The fact of the defendants being congregated at the residence of Jeff Diamond and apparently waiting in his yard while all of them, except perhaps one, were heavily armed, was admitted; but, they, of course, claimed that their accidental presence at that place and at that time, though residing in separated sections of the community,

was for innocent reasons, which, as told by some of them, was that they expected to meet at the residence of John Diamond because he was contemplating trading his farm for another one owned by a Mr. Montgomery, and the gathering at that particular time was intended to have been at his residence with the view of advising him about that trade. However, Ona Diamond testified that he happened to be present at that particular time on a mission to see something about trading for or buying a mule, while the defendant Thompson said that he went along just because the others asked him to; but he failed to testify as to the mission or object or purpose of the united visit of all of them to the home of either John or Jeff Diamond.

Defendants also testified that when they arrived at the residence of John Diamond he was temporarily absent, and (it apparently being concluded by them that their business with him was not urgent) they immediately repaired to the residence of Jeff Diamond, where they had been for something like an hour, according to their testimony, when the posse appeared. The commonwealth also proved by two or three witnesses that defendants were seen in the early forenoon gathering their crowd together and riding about over the neighborhood at somewhat of a rapid speed, indicating excitement, animation, and a hurried and fixed purpose in their assembling together.

Under this condition of the testimony, as so briefly but substantially outlined, it is strenuously argued in support of this ground, (a) that there was no proof to sustain the necessary corrupt conspiracy or confederation, and (b) that if the jury believed the proven statement of Bert Diamond that defendants knew of the intended visit of the officers, then it was incompetent against his codefendants because made after the accomplishment of the purpose of the conspiracy, and that it was not corroborated in the manner required by section 241 of the Criminal Code of Practice so as to authorize a conviction of his codefendants, and that the other proof in the case rendered such confession or admission by him insufficient to convict him under the provisions of section 240 of the same Code.

A mere casual view of the testimony, as above outlined, is sufficient to demonstrate the fallacy of those arguments. It entirely overlooks the flimsy and contradictory excuses for the assembling together of all four

378

defendants at the particular time and place and when none of their alleged excuses, as given by them, contemplated their being at that place, but only at the residence of John Diamond. Even if there was proof of a reasonable excuse for gathering together at the residence of John Diamond, there was no attempt whatever to prove a reason for adjourning the meeting to the residence of Jeff Diamond. Moreover, none of the defendants denied any of their proven conduct in assembling the crowd in the early morning of that day, which according to the testimony of two of them was all for the single and innocent purpose of consulting their father, and the father-in-law of Thompson, about making a land trade, and that too without him ever asking for their advice. Again, it might be pertinent to inquire: Why did they possess themselves with an arsenal when in the discharge of their alleged innocent purpose, unless it was to receive possible intruders not with open, but with loaded arms? Another proven fact, not heretofore mentioned, but which we consider a somewhat potent one, is that immediately upon the assembling of the alleged conspirators at the residence of Jeff Diamond, his wife and their infant child departed and went "hence away," to a place of safety and where they would escape injury from a possible battle.

According to the testimony for the commonwealth, the object of the alleged conspirators had not been fully performed at the time Bert Diamond made the statement to which the witnesses for the commonwealth testified, and which if true the statement was competent against the others, since in that event it would not be one made by one conspirator after the object and purpose of the conspiracy was over. However, the evidence to our minds shows conclusively that the other defendants were present when he is alleged to have made that statement and, if so, then it was competent as against them upon another familiar principle of the law of evidence. So that under no view of the case can it be said that the statement was incompetent against the one who made it, or any of his codefendants, and our analysis of the testimony is amply sufficient to establish the necessary corroboration required by both sections 240 and 241 of the Criminal Code of Practice. We therefore conclude that this ground is without merit.

The incompetent evidence complained of under ground 2 was that referred to and disposed of in ground

1, i. e., the proven statement attributed to Bert Diamond, and that of other witnesses, including the sheriff of the county, as to the contents of Jeff Diamond's residence discovered by executing the search warrant some time during the following night. They testified to discovering a still erected on a rock furnace in a floorless portion of the kitchen of the residence with undubitable evidences of having been recently used, and also barrels, tubs, and mash, with a portion of the latter poured out upon the ground in the back yard, and other facts demonstrating conclusively that at least Jeff Diamond, the occupant of that house, was engaged in the unlawful manufacture of intoxicating liquor. The ground of this objection is that it is proof of an independent offense and the rule against the admission of testimony to prove such independent offenses, so well established and fully recognized by this court (except in certain exceptional cases, one of which is to prove motive), is relied on in support thereof. But the testimony clearly comes within the exception to that general rule, i. e., that it was competent in this case, not only to disprove what defendants testified was their purpose in gathering together at that place on that occasion, but also to affirmatively establish their real purpose to be to prevent the searching of the house and premises of Jeff Diamond or discovery of the criminal facts that the search would reveal. Having so concluded, it results that this ground is also without merit.

The argument made in support of ground 3 is, that under the rule of criminal practice requiring the court, whether requested or not, to instruct the jury upon the whole law of the case, there should have been an instruction on the right of defendants to defend themselves and each other against the attack made upon them by the officers and other members of the posse, and which, it will be remembered, defendants testified occurred before either of them fired a shot. If defendants had been indicted and tried for maliciously shooting or striking any member or members of the posse, then this argument would be fatal to the judgment and a reversal would necessarily follow; but they were neither indicted nor tried for any such offense. On the contrary, they were accused in the indictment against them of conspiring, confederating, and banding themselves together for the purpose of doing what the commonwealth's witnesses testified to, and the fact that the members of the posse dis-

covered them with their belligerent equipment and themselves precipitated the battle (if it had been established by the testimony and believed by the jury) would not relieve defendants of the violations with which they were charged in the indictment against them, if proven by the requisite weight of the proof outside of such assault (and which we are most thoroughly convinced was done), and which conclusion no doubt was also reached by the jury. Therefore this ground is also unavailable.

Finding no error prejudicial to the substantial rights of either defendant, the judgment is affirmed.